IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ASHLEY BROUGHT, | : | No. 3:18cv788 |
|     Plaintiff | : | |
| | : | (Judge Munley) |
|   v. | : | |
| | : | (Magistrate Judge Carlson) |
| NANCY A. BERRYHILL, | : | |
| Acting Commissioner of Social | : | |
| Security, | : | |
|     Defendant | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**MEMORANDUM**

Before the court for disposition is Magistrate Judge Martin C. Carlson's report and recommendation (hereinafter "R&R") which proposes that we affirm the decision of the Commissioner of Social Security denying the plaintiff's claim for social security disability insurance benefits pursuant to Title II of the Social Security Act. (Doc. 13). The plaintiff's action is brought under § 1383(c)(3) of the Social Security Act and 42 U.S.C. § 405(g). The matter is fully briefed and ripe for disposition.

**Background**

Plaintiff Ashley Brought began her quest for insurance benefits under the Act on July 8, 2014, when she filed an application for disability claiming that she was disabled due to psoriatic arthritis, obesity, hammertoes, bone spurs, fibromyalgia, psoriasis, and bi-polar disorder. (Doc. 13). The plaintiff alleges that

these disabilities began on December 17, 2013. (Doc.1, Pl.'s Compl. ¶ 5). In response to her request, the Social Security Administration (hereinafter "SSA") denied the plaintiff's application on December 9, 2014. (Id. at ¶ 6). After the SSA denied the plaintiff's application, the plaintiff filed a timely written request for a hearing before an Administrative Law Judge (hereinafter "ALJ") on January 13, 2015. (Id. at ¶ 7).

At the hearing, the ALJ learned about a plethora of objective clinical records and findings that spoke of the plaintiff's abilities and disabilities. The first was an objective medical treatment record that described the plaintiff's psoriatic arthritis as mild. (Doc. 8-15, Administrative Record at 901 (hereinafter "R. at")). The second evaluation was an objective consultative examination that concluded that the plaintiff appeared to be in no acute distress, had a normal stance, and did not reveal sufficient trigger points necessary to confirm a diagnosis of fibromyalgia. (R. at 601-02).

The ALJ also discovered objective mental health care records between 2012 and 2016. (Doc. 13). Throughout this time period, mental health care professionals made numerous objective Global Assessment Functioning (hereinafter "GAF") evaluations of the plaintiff's mental and emotional state.[1] The

---

[1] A GAF score is a numerical summary of a clinician's judgment of an individual's psychological, social, and occupational functioning on a hypothetical continuum of mental health on a scale of one hundred. See Diagnostic and Statistical

plaintiff's GAF evaluation scores ranged between 50 and 65, which indicated that the plaintiff suffered "[only] moderate impairment in social or occupation functioning." (Id. at 4). Dr. Nitin Sheth, who made a majority of these GAF evaluations, concluded that the plaintiff was friendly, communicative, and fully oriented; had logical thinking, appropriate thought content, and normal speech; had intact cognitive functioning and short and long term memory; and had the ability to abstract and do arithmetic. (R. at 547, 551, 555, 560, 564, 568, 573, 577, 582, 587, 592, 596, 675, 678-79, 682-83, 686, 690-91, 698, 701, 705, 709, 713, 728, 755, 788-89, 792-93, 801). Many health care providers also supported the conclusion that the plaintiff was alert and oriented, and had an appropriate mood and affect. (R. at 280, 285, 289, 292, 297, 302, 306, 314, 316, 344, 437, 603-04, 838). The ALJ afforded great weight to these objective evaluations.

Conversely, the ALJ learned about Dr. David Tanner's treating source opinion that found that the plaintiff's physical and emotional impairments were totally disabling. (R. at 886-96). The ALJ, however, found that Dr. Tanner had

---

Manual of Mental Disorders, 32-34 (4th ed. text rev. 2000) (hereinafter 'DSM-IV'). A score is placed in a particular decile if either symptom severity or the level of functioning falls with that range. Id. A "GAF score[] in the 51-60 range indicate[s] [only] moderate impairment in social or occupational functioning." Cherry v. Barnhart, 29 Fed.Appx. 898, 900 (3d Cir. 2002). Similarly, "a GAF score of 61-70 [simply] indicates transient and expected reactions to psychosocial stressors." DaVinci v. Astrue, No. 1:11-CV-1470, WL 6137324, at *2 (M.D. Pa. Sept. 21, 2012).

3

seen the plaintiff infrequently, made minimal treatment notes, and never conducted clinical testing of the plaintiff's physical or mental limitations. (R. at 627-37, 692-70). Additionally, during the hearing, the ALJ heard testimony from the plaintiff who testified that her impairments subjected her to 20 bad days a month and prevented her from cooking, cleaning, shopping, or engaging in tasks of basic hygiene. (R. at 51-58).

Considering in their totality the objective clinical records and the plaintiff's subjective complaints, the ALJ issued a decision denying the plaintiff's application for disability benefits. (R. at 12-26). The plaintiff initiated the instant action on April 11, 2018, asking us to reverse the decision of the ALJ and award benefits and to remand the case back to the ALJ for a new hearing. (Doc. 1). The plaintiff seeks reversal on grounds that the ALJ's decision was not supported by substantial evidence. (Id.) Magistrate Judge Carlson reviewed the record in this case and recommends that the final decision of the Commissioner of Social Security denying the plaintiff's benefits be affirmed. (Doc. 13). The magistrate judge found that substantial evidence supported the ALJ's evaluation of the clinical records and findings in this case. (Id.) The plaintiff filed objections to the magistrate judge's R&R. (Doc. 14). On May 8, 2019, the Commissioner filed a response, bringing the case to its current posture. (Doc. 15).

**Jurisdiction**

The court has federal question jurisdiction over the Social Security Administration appeal.  See 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); see also 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commended within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.  Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has her principal place of business . . .").

**Standard of Review**

As noted above, we have before us for disposition an R&R to which the plaintiff has objected.  In disposing of objections to a magistrate judge's R&R, the district court must make a *de novo* determination of those portions of the report against which objections are made.  28 U.S.C. § 636(b)(1)(c); see also Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983).  The court may accept, reject, or

modify, in whole or in part, the findings or recommendations made by the magistrate judge. Henderson v. Carlson, 812 F.2c 874, 877 (3d Cir. 1987). The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id.

In reviewing a Social Security appeal, the court must determine whether "substantial evidence" supports the ALJ's decision. See 42 U.S.C. § 405(g); Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). "[S]ubstantial evidence has been defined as 'more than a mere scintilla.'" Hagans, 694 F.3d at 292 (quoting Plummer, 186 F.3d at 427). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).

The court should not reverse the Commissioner's findings merely because evidence may exist to support the opposite conclusion. See 42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (stating that courts may not weigh the evidence or substitute their own conclusions for those of the fact-finder); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (indicating that when the ALJ's findings of fact are supported by substantial evidence, courts are bound by those findings, even if they would have decided the factual inquiry differently). In an adequately developed factual record, substantial evidence may

be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusion from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo, 383 U.S. at 620.

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981), and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Plummer, 186 F.3d at 429 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)). The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir. 2008). Thus, a reviewing court must scrutinize the record as a whole. Smith v. Califano, 637 F2d 968, 970 (3d Cir. 1981).

**Discussion**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is incapable of engaging in "substantial gainful activity" when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2).

The ALJ evaluates disability benefits claims with a five-step sequential analysis. 20 C.F.R. § 404.1520(a)(4). This analysis requires the ALJ to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity; (2) has an impairment, or combination of impairments, that is severe; (3) has an impairment or combination of impairments that meets or equals the requirements of a "listed impairment"; (4) has the "residual functional capacity" to return to his or her past work; and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4).

8

Applying the five-step sequential analysis to the instant case, the ALJ found that the plaintiff satisfied Step 1 because she has not engaged in substantial gainful activity during the period from her alleged onset disability in December 2013. (R. at 17). At Step 2, the ALJ concluded that the plaintiff had the following mild impairments: psoriatic arthritis, obesity, hammertoes, and a left calcaneal spur. (Id.) In reaching this conclusion, the ALJ cited to clinical records that consistently documented the plaintiff's depression, anxiety and bi-polar conditions as moderate to mild degrees of impairment. (Id.) The ALJ further evaluated state agency expert testimony, which determined that the plaintiff could satisfactorily perform in the four major areas of mental functioning: understanding, remembering, and applying information; interacting with others; concentration, persistence and pace; and adapting and managing. (R. at 19-20). The ALJ accounted for the plaintiff's emotional conditions by limiting her to simple tasks that entail only occasional exposure to others. (R. at 21).

The ALJ next determined that the plaintiff has the residual functional capacity[2] (hereinafter "RFC") to perform a limited range of light work. (R. at 21). Proceeding to Steps 4 and 5, the ALJ then found that the plaintiff had no relevant work history but possessed the ability to perform jobs that existed in significant

---

[2] A method the SSA uses to assess an applicant's ability to perform essential job duties.

9

numbers in the regional and national economies. (R. at 25). As such, the ALJ concluded that the plaintiff did not qualify for disability benefits and denied her claim. (Id.) The plaintiff then filed the instant appeal.

As noted above, the Clerk of Court assigned the plaintiff's appeal to Magistrate Judge Martin C. Carlson for an R&R. Magistrate Judge Carlson recommends that the final decision of the Commissioner of Social Security denying the plaintiff's benefits be affirmed. (Doc. 13). Specifically, the magistrate judge found that the ALJ's decision was supported by substantial evidence.

The plaintiff objects to Magistrate Judge Carlson's R&R, asserting that substantial evidence does not support the ALJ's decision for four reasons. First, the plaintiff claims that Magistrate Judge Carlson failed to consider the plaintiff's emotional impairments at Step 2 and throughout the sequential evaluation process. (Pl. Obj. at 1-2). Second, the plaintiff argues that the ALJ improperly assessed the opinion of Dr. Tanner. (Id. at 2-3). Third, the plaintiff asserts that Magistrate Judge Carlson failed to consider that "credibility" was eliminated from Social Security Ruling (SSR) 16-3p. (Id. at 3-4). Finally, the plaintiff argues that the ALJ improperly used a clear and convincing standard instead of a preponderance of the evidence standard in evaluating the evidence. (Id. at 4). We will discuss each issue in turn.

## I. Magistrate Judge Carlson Properly Evaluated Plaintiff's Emotional Impairments

The ALJ concluded that the plaintiff's emotional impairments were not disabling. (Doc. 13). Plaintiff Brought argues that this conclusion was not supported by substantial evidence arguing that the ALJ failed to take into account the plaintiff's emotional impairments when determining that she was not disabled. (Doc. 14). We disagree with the plaintiff.

The ALJ found that the plaintiff could satisfactorily understand, remember, and apply information; interact with others; concentrate and maintain pace; and adapt and manage herself. (R. at 19-20). The ALJ also discovered that the plaintiff's psychiatrist, Dr. Sheth, determined that the plaintiff communicated well, had logical thinking, and had the ability to abstract and solved arithmetic calculations. (R. at 547, 551, 555, 560, 564, 568, 573, 577, 582, 587, 592, 596, 675, 678-79, 682-83, 686, 690-91, 698, 701, 705, 709, 713, 728, 755, 788-89, 792, 801). Dr. Sheth, therefore, concluded that the plaintiff had only mild to moderate mental health issues. (R. at 551, 564, 573, 740, 761, 781, 789, 802, 848, 859, 863, 873).

In addition to observing the medical evidence, the ALJ also looked at the plaintiff's activities. For example, the ALJ found that the plaintiff graduated from high school, lived alone, read, shopped in stores, drove herself to appointments and grocery shopping, and spent time with others. (R. at 49-57, 211, 220, 223-

11

24, 601). The plaintiff's moderate mental health issues, therefore, led the ALJ to conclude that the Plaintiff was not qualified for disability benefits under the Social Security Act. As a result, the ALJ's conclusion that the plaintiff's emotional impairments were not disabling (Doc. 14 at 1-2) is supported by substantial evidence.

## II. Magistrate Judge Carlson Properly Assessed Dr. Tanner's Opinion

The second issue is whether the magistrate judge properly assessed Dr. Tanner's opinion. The ALJ concluded that Dr. Tanner's opinion—which stated that the plaintiff could barely walk or use her hand, fingers, or arms and that the plaintiff was mentally incapacitated from engaging in unskilled labor—conflicted with other objective medical source statements. (R. at 23-24). As a result, the ALJ concluded that Dr. Tanner's opinion was an outlier and therefore afforded more weight to the objective medical opinions. (Id.) For example, records of physical examinations revealed that the plaintiff experienced a moderate degree of physical functional limitations and pain. These records reflect an inconsistency with Dr. Tanner's medical conclusions, which stated that the plaintiff could barely walk or use her hand, fingers, or arms. (R. at 887-90). Likewise, multiple medical evaluations revealed that the plaintiff had moderate degrees of mental impairment. (R. at 547, 551, 555, 560, 564, 568, 573, 577, 582, 587, 592, 596, 675, 678-79, 682-83, 686, 690-91, 698, 701, 705, 709, 713,

12

728, 755, 788-89, 792, 801).[3] Despite these medical findings, Dr. Tanner's mental RFC opinion concluded that the plaintiff did not have the mental capacity to perform any work. (R. at 893-94).

As stated in Judge Carlson's R&R, the ALJ was entitled to rely on the state agency opinion which were "more congruent with [the plaintiff's] treatment history than the extreme impairments found by Dr. Tanner." (R. at 24, 121-22). As a result, the ALJ's decision to afford less weight to Dr. Tanner's medical opinion is supported by substantial evidence.

### III. Magistrate Judge Carlson Properly Assessed the Plaintiff's Subjective Evaluations

At the hearing, the ALJ determined that the plaintiff's subjective statements regarding her symptoms were "not fully credible." (Doc. 14). Magistrate Judge Carlson's R&R concluded that the ALJ's determination was supported by substantial evidence. (Id.) The plaintiff argues that Magistrate Judge Carlson erred in his review of the ALJ's evaluation of her subjective allegations because he failed to consider that "credibility" was eliminated from Social Security Ruling (SSR) 16-3p. (Id.) We disagree with the plaintiff.

Although the SSR 16-3p clarifies that adjudicators should not make statements about an individual's truthfulness, it permits adjudicators to assess

---

[3] These medical evaluations led the ALJ to determine that the plaintiff had the RFC to perform a limited range of light work. (R at 21).

13

whether an individual's statements are consistent with other evidence in the record. See Levyash v. Colvin, No. CV 16-2189 (BRM), 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018). Here, Judge Carlson considered the plaintiff's subjective testimony regarding her degree of impairment—that she had 20 bad days each month—and determined that this description in comparison far exceeded the objective medical evidence in the record. (Doc. 13).

Magistrate Judge Carlson also concluded that it was proper for the ALJ to afford greater weight to the plaintiff's objective medical records rather than her own subjective complaints of pain. (R. at 29-31). Determining the effectiveness and type of treatment a claimant is receiving are important indicators about the intensity and persistence of symptoms. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see, e.g., Phillips v. Barnhart, 91 Fed. App'x. 775, 782 (3d Cir. 2004) ("conservative treatment history supports the ALJ's determination that [the claimant's] subjective complaints of pain were not entitled to full credence").

Although he used the word "credibility" in his conclusion, Magistrate Judge Carlson correctly concluded that the ALJ's evaluation of the plaintiff's subjective complaints was based on legitimate factors and grounded on treatment records, medical history, and medical opinions. (Doc. 13). The ALJ's assessment of the plaintiff's subjective evaluation is supported by substantial evidence.

### IV. The ALJ was not Required to Use a Preponderance of the Evidence Standard in Making Her Determinations

The plaintiff finally argues that the ALJ, by using the "'not entirely consistent' standard", improperly applied a clear and convincing evidence standard in making her determination to deny her disability benefits. We disagree. The plaintiff failed to cite to the record where the ALJ improperly used a "'not entirely consistent' standard." Because this quoted language is absent anywhere in the ALJ's opinion, the plaintiff's objection has no merit and will be overruled.

**Conclusion**

For the foregoing reasons, we find the ALJ's decision to deny plaintiff's claims for social security benefits is supported by substantial evidence. We will adopt the magistrate judge's R&R recommending that the plaintiff's request for a new administrative hearing be denied and the Commissioner's final decision denying the plaintiff's claim be affirmed. An appropriate order follows.

Date: June 13, 2019　　　　　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　　　　　　　s/ James M. Munley
　　　　　　　　　　　　　　　　　　　　　　**JUDGE JAMES M. MUNLEY**
　　　　　　　　　　　　　　　　　　　　　　**United States District Court**